IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| MOHAMMED MOHAMMED ALMASMARI, | * * * * | |
| Plaintiff, | * * | Civ. No. MJM-25-83 |
| v. | * * | |
| MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security, et al., | * * * * | |
| Defendants. | * * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This matter is before the Court on the Motion to Dismiss filed by the defendants, the Secretary of Homeland Security, the Director of United States Citizenship and Immigration Services ("USCIS"), USCIS, and the Board of Immigration Appeals ("BIA") (collectively, "Defendants"), seeking dismissal of the Complaint for Injunctive and Declaratory Relief (the "Complaint") filed by plaintiffs Mohammed Mohammed Almasmari and Mulook Mohamed Atiq Almasmari[1] (collectively, "Plaintiffs"). ECF 10 (Mot.). The Complaint seeks judicial review of the BIA's decision to affirm the USCIS's denial of an immigration petition Mohammed filed on behalf of his spouse, Mulook, under the Administrative Procedure Act ("APA") and relief from alleged equal protection violations. ECF 1 (Compl.). Defendants request dismissal of the Complaint for lack of subject matter jurisdiction and failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). ECF 10-1 (Def. Mem.). The motion is fully briefed.

---

[1] In this Memorandum Opinion, the Court will refer to the plaintiffs by their first names to avoid any confusion, considering that they share the same surname.

1

No hearing is necessary to resolve it. Loc. R. 105.6 (D. Md. 2025). The Motion to Dismiss is granted for the reasons stated herein.

## I.    BACKGROUND

Mohammed Mohammed Almasmari ("Mohammed") was born in Yemen. Compl., Ex. A (ECF 1-2 at 3). He married his first wife, Khaizaran Nasser Almasmari ("Khaizaran"), in Yemen on January 5, 1982. Compl. (ECF 1) ¶ 24. Mohammed alleges that he divorced Khaizaran on May 1, 1993. *Id.* ¶ 25. The divorce was not registered until January 7, 2013. *Id.* ¶ 26. As explained in greater detail below, the parties dispute the details concerning Mohammed's divorce from his first wife. On December 25, 1994, Mohammed contracted for marriage with Mulook Mohamed Atiq Almasmari ("Mulook"). *Id.* ¶ 29. On January 1, 1995, Mohammed and Mulook were married in Yemen. *Id.* ¶ 30. Mohammed entered the United States as a lawful permanent resident in 2015, after petitioning by his daughter from his first marriage, and resides in Salisbury, Maryland. Compl. ¶¶ 22–23.

In August 2017, Mohammed filed with USCIS an I-130 Petition for Alien Relative on behalf Mulook. *Id.* ¶ 31. An I-130 Petition allows American citizens or Lawful Permanent Residents to petition for eligible foreign relatives to immigrate to the United States. The submission included a "Divorce Declaration Document" reflecting that an "agent" of Mohammed went to the Yemeni Ministry of Justice in September 2012 to request issuance of a "divorce document" to Khaizaran, and that the divorce occurred on May 1, 1993. Compl., Ex. E (ECF 1-2 at 15).

On September 10, 2019, USCIS issued Mohammed a Request for Evidence ("RFE"), seeking evidence supporting the legal termination of his first marriage, a new passport style photo, a marriage contract issued by the Ministry of Justice to support his marriage to Mulook, and all

names used by him and Mulook, the beneficiary. *See id.* ¶ 32; Def. Ex. 1 (ECF 10-2) at 3.[2]

Specifically, USCIS requested that Mohammed:

> Submit legal evidence and family law sections that prove proxy divorces and retroactive divorces are permitted in Yemen.
>
> Submit evidence that is contemporaneous with the divorce event on May 1, 1993 to cooberate [sic] the divorce occurred on that date.
>
> Submit proof of the legal termination of the marriage of Mohammad Mohammad Muslih Al Masmari and Khaizaran Nassar Saleh Al Masmari issued by the Ministry of Interior.

Def. Ex. 1 at 3. In its RFE to Mohammed, USCIS explained why his initial petition was deficient as follows:

> In order for the legal termination of a marriage to be considered valid for immigration purposes, it generally must be valid in the jurisdiction where it was terminated. In addition, the divorce must also be recognized in the jurisdiction where any subsequent marriage occurred. Matter of P, 4 I&N Dec. 610, (BIA 1952). The Divorce Declaration Document issued by the Ministry of Justice submitted with the petition appears to be a proxy divorce, as it shows that an agent for the petitioner was present instead of the petitioner. It also appears to be a retroactive divorce, as the documents states that the divorce occurred in 1993, but the proceedings before the Ministry of Justice occurred in 2012.

*Id.* at 3.

On November 7, 2019, Mohammed responded to the RFE with a copy of the legal divorce contract issued by the Ministry of Justice, dated October 17, 2019, and a copy of a legal marriage contract issued by the Ministry of Justice on December 25, 1994. *See* Compl. ¶ 33; Def. Ex. 2 (ECF 10-3) at 2.

---

[2] When ruling on a 12(b)(1) or 12(b)(6) motion, a court may consider, without converting the motion into one for summary judgment, documents outside the pleadings that are incorporated by reference into the complaint or are integral to its claims and authentic. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

On January 28, 2020, USCIS denied the I-130 Petition. *See* Compl. ¶ 34; Def. Ex. 2. In its decision, USCIS explained that Plaintiffs failed to submit sufficient evidence, including requested evidence, to establish eligibility. Def. Ex. 2 at 3.

Mohammed appealed to the Board of Immigration Appeals ("BIA") on February 26, 2020. *Id.* ¶ 35. On March 11, 2022, the BIA affirmed the decision of USCIS to deny the I-130 Petition. *Id.* ¶ 36. Upon de novo review, the BIA concluded that "the petitioner did not prove, by a preponderance of the evidence, that he was legally free to marry the beneficiary on January 1, 1995." Compl., Ex. O (ECF 1-2 at 94–97) (BIA Decision). The BIA recognized that Mohammed submitted in response to the RFE a duplicate copy of a legal divorce contract from the Ministry of Justice, issued on October 17, 2019, stating that the petitioner divorced his prior spouse on May 1, 1993. *Id.* But the BIA determined that this document was "neither contemporaneous with the event in question, nor persuasive[,]" and that USCIS's "request for contemporaneous evidence is not an improper ultra vires requirement of the petitioner." *Id.*

The BIA also agreed with USCIS that both the 2019 and 2012 divorce documents were "inadequate to show that the petitioner's first marriage was lawfully terminated" under Yemeni law. *Id.* The BIA explained, "The petitioner did not meet his burden of proof to establish that the proxy divorce decree, where an agent operated on his behalf petitioner, is legally valid in Yemen." *Id*. Additionally, the BIA noted that although Mohammed submitted new evidence on appeal, the BIA generally does not accept new evidence offered for the first time on appeal, and that Mohammed was free to submit a new visa petition supported by competent evidence. *Id.* at 97.

Plaintiffs filed the instant Complaint on January 10, 2025, challenging the BIA's affirmance under the APA and Equal Protection Clause. ECF 1 (Compl.). In short, the basis for Plaintiffs' claim is as follows:

4

> 37. Under Yemeni law, a man only needs to tell his wife 'I divorce you' to effectuate a divorce, as explained in Article 58 of Section 2 of the Personal Status Law of Yemen.
>
> 38. There is no legitimate reason for the Defendants to believe that Plaintiff Mohammed divorced his first wife in 2013, when the registration clearly denotes the divorce occurred on May 1, 1993.

Compl. ¶¶ 37–38. Defendants filed a Motion to Dismiss, arguing that the Complaint is subject to dismissal for lack of subject matter jurisdiction and failure to state a claim for relief. ECF 10. Plaintiffs filed a response in opposition to the motion, ECF 13, and Defendants filed a reply in support of it, ECF 14.

## II.  STANDARDS OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may be facial or factual. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). A facial challenge argues that the complaint fails to allege facts sufficient to support a finding that a court has subject matter jurisdiction. *Id.* Thus, if the 12(b)(1) motion is a facial challenge, the factual allegations of the complaint are treated as true. *Id.* In a factual challenge, there is no presumption that the facts in the complaint are true, and "the district court may . . . go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings." *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009). Plaintiffs bear the burden of proving subject matter jurisdiction in response to a motion to dismiss under Rule 12(b)(1). *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the complaint. To survive a Rule 12(b)(6) motion, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby nudging "their claims

across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Although courts must generally accept as true the allegations of a complaint, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a 12(b)(6) motion, the court may consider materials beyond the pleadings that are "integral to the complaint and authentic" without converting the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d at 136 (internal citation omitted).

## III.   ANALYSIS

### A.  Count One

In Count One of their Complaint, Plaintiffs assert that Defendants' denial of their I-130 Petition was arbitrary and capricious because they failed to properly apply Yemeni law. Even if Plaintiffs are correct regarding Yemeni law, however, they have not plausibly alleged that the agency's decision was arbitrary, capricious, or contrary to law, because it was Mohammed's burden to prove the legal termination of his first marriage. Mohammed did not provide evidence requested in the RFE, and, based on what evidence it had, USCIS's decision was rational.

The APA provides the statutory basis for a court to review a final agency action. Under the APA, the court shall "hold unlawful and set aside agency action, findings and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Appalachian Voices v. U.S. Dep't of Interior*, 25 F.4th 259, 268 (4th Cir. 2022). A district court's review of agency action is "highly deferential, with a presumption in favor of

finding the agency action valid." *Ohio Valley Envtl. Coal v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (citing *Natural Res. Def. Council, Inc. v. EPA*, 16 F.3d 1395, 1400 (4th Cir. 1993)). This Court thus "perform[s] only the limited, albeit important task of reviewing agency action to determine whether the agency conformed with controlling statutes, and whether the agency has committed a clear error of judgment." *Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 263 (4th Cir. 2006) (citation omitted). *See also Ren v. USCIS*, 60 F.4th 89, 93 (4th Cir. 2023) (quoting *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021)) (noting that courts need only "ensure that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision"). "Agency action is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Appalachian Voices*, 25 F.4th at 269 (quoting *State Farm*, 463 U.S. at 43). The court cannot "substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43. The agency's decision will stand if "the record reveals that a rational basis exists for the decision." *Natural Resources Defense Council*, 16 F.3d at 1401.

Defendants argue that Plaintiffs fail to state an APA claim because "the BIA's affirmance of USCIS' denial is rational, and the record evidence does not compel a contrary conclusion." ECF 10-1 at 7. Specifically, Defendants argue that the BIA's decision was based on the two documents Mohammed provided, which both fail to satisfy Mohammed's burden of proving the legal termination of his first marriage. *See* ECF 14 at 3. According to Defendants, the BIA rationally concluded that the 2019 divorce document issued by Yemen's Ministry of Justice, which stated

that Mohammed "divorced his prior spouse on May 1, 1993," was not sufficient because it was not "contemporaneous with the events in question." ECF 10-1 at 8 (quoting BIA Decision (citing *Matter of Pineda*, 20 I. & N. Dec. 70, 73 (BIA 1989))).[3] The BIA also agreed that the 2012 divorce document issued by the Ministry of Justice was insufficient, noting that "[t]he petitioner did not meet his burden of proof to establish that the proxy divorce decree, where an agent operated on his behalf [sic], is legally valid in Yemen." BIA Decision (citing *Matter of Nwangwu*, 16 I & N 61, 63–64 (BIA 1976)).

Plaintiffs contend that Defendants misunderstand the record evidence. First, they argue that a husband stating "I divorce you" to his wife is sufficient to divorce in Yemen, and that no registration of the divorce is required nor common. *See* ECF 13 at 9–10. Plaintiffs then argue that the divorce documents provided to USCIS indicate that although an agent went on Mohammed's behalf to "*request the issuance* of a divorce document," detailing the events of May 1, 1993, nothing in those documents suggest that the divorce itself was being effected by proxy or retroactively. *See id.* at 10–11 (emphasis in original). Next, Plaintiffs argue "there is no basis for the Defendants accepting documents from the civil Ministry of Interior but not the judicial Ministry of Justice which is empowered to enter such judgments by law. Nor should the Plaintiff be required to provide the legal provisions of the law that the Department is responsible for knowing." *Id.* at 11. Finally, Plaintiffs argue that it is "contrary to the regulations" for the Defendants to claim that documents that were valid for the I-130 Petition from Mohammed's daughter on his behalf, which required documents showing Mohammed terminated prior marriages, are different from the documents that are necessary here for Mohammed's I-130

---

[3] The BIA Decision is located at ECF 1-2 at 95–97.

Petition on behalf of Mulook. *Id.* Based on the foregoing, Plaintiffs argue they have sufficiently presented an arbitrary and capricious claim under the APA. This Court disagrees.

Under 8 U.S.C. § 1361, the visa petitioner bears the burden of establishing eligibility for the benefit sought. Under 8 C.F.R. § 204.2(a)(2), the petitioner must provide evidence of the claimed relationship, which must include, among other things, "a certificate of marriage issued by civil authorities, and proof of the legal termination of all previous marriages of both the petitioner and the beneficiary."

Here, the BIA based its decision on the copies of the divorce documents provided by Mohammed. The October 17, 2019, divorce document—issued by the Yemeni Ministry of Justice—states that an individual on behalf of Mohammed came to "request the release of his divorce contract from Mrs. Khaizaran Nasser Almasmari." Def. Ex. 3 (ECF 10-4) at 2. The 2019 document then states that "husband insisted on divorce of his wife and he divorced her an absolute divorce on 05/01/1993." Def. Ex. 3 at 2. The 2019 document contains the same information as the other divorce document in the record, which states that an "agent" of Mohammed "arrived … and asked to issue a divorce document" and then summarizes Mohammed's divorce from his first wife as follows: "The husband insisted on divorce of his wife. The husband admitted that he had divorced her irrevocable divorce dated on 1/May/1993[.]" Compl., Ex. E.

Even assuming Mohammed is correct about Yemeni law and customs, Plaintiffs cannot show that Defendants acted arbitrarily and capriciously in denying his petition. "When the petitioner relies on a foreign law to establish eligibility for the beneficiary, the application of the foreign law is a question of fact, which must be proved by the petitioner." *Matter of Kodwo*, 24 I. & N. Dec. 479, 482 (BIA 2008). UCSIS issued an RFE to Mohammed and instructed to him to submit relevant "legal evidence and family law sections" that prove his divorce was valid under

Yemeni law, contemporaneous evidence of the purported 1993 divorce event, and proof of the legal termination of the marriage "issued by the Ministry of Interior." Def. Ex. at 3. Plaintiffs did not submit Yemeni "legal evidence and family law sections" or contemporaneous evidence of any 1993 divorce. Considering the evidence that was before the agency, Plaintiff does not point to a clear error of judgment or demonstrate how the agency decision exceeds the "zone of reasonableness." *Ren*, 60 F.4th at 93. Plaintiffs do not counter Defendants' argument that USCIS's "request for contemporaneous evidence is not an improper ultra vires requirement of the petitioner." ECF 10-1 at 5. Indeed, a policy calling for contemporaneous evidence is rational in a system that must adjudicate thousands of petitions against the backdrop of many countries' varying legal systems, processes, and customs, and is rationally connected to the integrity of immigration benefits. Additionally, the documents that Mohammed did provide to USCIS do not conclusively establish his position on Yemeni law. Without the Yemeni "legal evidence and family law sections" requested in the RFE, which was Plaintiffs' burden to produce to USCIS during the administrative proceeding, the legality of Mohammed's verbal divorce from Khaizaran would not be clear to an official tasked with deciding his I-130 Petition.[4] There is nothing irrational or arbitrary about placing the burden of establishing the relevant foreign law on the petitioner.

Plaintiffs' other argument, that there "there is no basis for the Defendants accepting documents from the civil Ministry of Interior but not the judicial Ministry of Justice," ECF 13 at 11, is belied by Defendants' citation to the Department of State's Reciprocity Schedule for Yemen. As Defendants point out, the Department of State's Reciprocity Schedule for Yemen, under "Marriage, Divorce Certificates," states that the "Issuing Authority" is the "*Ministry of the*

---

[4] Plaintiffs' argument that they shouldn't "be required to provide the legal provisions of the law that the Department is responsible for knowing," ECF 13 at 11, contradicts their early acknowledgment that Plaintiffs bear the burden to establish eligibility.

*Interior*, Civil Status Authority and Civil Registry," available at: https://perma.cc/U4AS-PBNV

(last visited March 29, 2026) (emphasis added). Under "Alternate Documents," the schedule states:

"There are no alternate documents." *Id.* Under "Exceptions," it states: "There are no exceptions."

*Id.* If the Department of State is incorrect about the relevant issuing authority, that would again be

a petitioner's burden to show.

Ultimately, USCIS provided Mohammed with notice and the opportunity to clarify the

issues now before this Court when USCIS issued its RFE. Based on record evidence before the

agency, its decision was not arbitrary and capricious.[5]

### B. Count Two

Count Two of the Complaint asserts a claim against Defendants for violation of Plaintiffs'

rights under the Equal Protection Clause.

Defendants argue that Plaintiffs' Equal Protection claim must be dismissed because

Plaintiffs fail to allege that USCIS approved petitions filed by similarly situated aliens. *See* ECF

10-1 at 13. To state a viable claim, according to Defendants, Plaintiffs needed to allege that "non-

Yemeni petitioners who neglected to meet their evidentiary burden were not subjected to the same

---

[5] Plaintiffs point out that a child petitioning for a parent to obtain an I-130 visa is required to "submit copies of documents showing that each of [their parents'] prior marriages was legally terminated." ECF 13 at 11 (citing 8 C.F.R. §§ 103.2 & 103.5(f)). Plaintiffs suggest that, because USCIS granted the petition Mohammed's daughter submitted on his behalf, USCIS must accept Mohammed's documentation in support of his petition on behalf of Mulook. But, as Defendants argue in response, each of these petitions was required to establish a distinct familial relationship. Defendants point out that when Mohammed was the beneficiary of an I-130 petition filed by his daughter, USCIS sought to determine whether his daughter was "born in wedlock[]" for purpose of establishing a qualifying parent-child relationship under 8 U.S.C. § 1101(b)(1). The focus was not on the validity of Mohammed's divorce.

Plaintiffs cite Exhibits P and Q to the Complaint for the proposition that, "[d]uring the visa process by his daughter, [Mohammed stated] that he was previously married and divorced on May 1, 1993, and provided a divorce registration completed in 2013." ECF 13 at 2–3. But I cannot locate a divorce registration in Exhibits P and Q. *See* Compl., Exs. P & Q (ECF 1-2 at 98–109). In fact, Exhibit Q appears to be Mohammed's daughter's petition on his behalf, and under "information about your relative," the form indicates that Mohammed does not have any prior spouses.

standard of evidence, or that their I-130 petitions were granted despite indications that the petitioner was in a pre-existing valid marriage separate than the marriage on which a visa petition is based." *Id.* at 14. Moreover, Defendants contend that the denial of the I-130 petition had "nothing to do with Plaintiffs' race or national origin, but rather Plaintiffs' own failure to meet their evidentiary burden." ECF 14 at 7.

Plaintiffs contend that they plausibly alleged that the Defendants "perpetuate a policy against Yemeni applicants without substantial support or evidence to support doing so." ECF 13 at 15. According to Plaintiffs, they have pleaded sufficient facts to show that their case was treated differently based on a protected classification. *Id.* at 15–16.

"In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011) (citing *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)); *see also Morrison*, 239 F.3d at 654 (noting that an equal protection claim prohibits "governmental decisionmakers from treating differently persons who are in all relevant respects alike") (internal citation omitted).

Here, Plaintiffs allege that Defendants do not subject "similarly situated petitioners and applicants for immigration benefits of other race and/or national origin to the same requirements as those applied to Yemeni petitioners and applicants." Compl. ¶ 98. Plaintiffs further allege that USCIS denies petitions by people of Yemeni decent "based on a heightened standard, only applied to Petitioners and beneficiaries of Yemeni race or national origin, which considers all Yemeni petitions to be 'fraudulent until proven otherwise.'" Compl. ¶ 57; *see also id.* ¶¶ 47–66. But Plaintiffs fail to explain in their Complaint how USCIS's denial of their I-130 petition based on a

rationally determined evidentiary deficiency is attributable to any policy or practice specific to Yemeni petitioners and not other groups. Plaintiffs do not identify or describe any "similarly situated petitioners and visa applicants" of other ethnicities or nationalities or how the processing of their petitions and applications differed from that of Plaintiffs or other Yemeni petitioners and applicants. Nor do Plaintiffs provide any other facts to support any reasonable inference that Petitioners were treated differently than petitioners and applicants of other ethnicities or nationalities as a result of a discriminatory animus. *See Mairykeeva v. Barr*, 378 F. Supp. 3d 391, 398 (E.D. Pa. 2019) (noting that an equal protection claim requires an allegation that the complainant was treated differently than those who are "similarly situated"). The Complaint offers only conclusory statements and no factual enhancement to raise Plaintiffs' bare allegation of unequal treatment above the speculative level and to support a plausible equal protection claim. Accordingly, Count Two must be dismissed.

### C. Count Three

Count Three of the Complaint seeks declaratory relief against USCIS's alleged Yemeni-specific policies and procedures. Plaintiffs allege that Defendants have "adopt[ed] separate and distinct immigrant visa processing and adjudication procedures and standards which are applied only based on the Petitioner or Beneficiary's Yemeni race or national origin," and that Defendants adopted such policies "for the purpose of discriminatorily denying and/or otherwise preventing the adjudication of Yemeni petitions." Compl. ¶ 101.

Defendants argue that Plaintiffs do not have standing for their broad claims about the unlawfulness of USCIS's alleged Yemeni adjudication procedures writ large because they lack an injury-in-fact that could be likely redressed by a favorable judicial decision. *See* ECF 10-1 at 11–12. Specifically, Defendants contend that—no matter what USCIS's alleged policies were with

respect to Yemeni petitioners—"Plaintiffs would likely remain ineligible for relief on account of Mr. Almasmari's failure to satisfy his statutory burden of establishing, by a preponderance of evidence, his eligibility for the visa benefit sought." *Id.* at 12.

Plaintiffs argue that they have standing to generally challenge USCIS's alleged Yemeni procedures because "they were improperly denied benefits they were eligible for because of the Defendants' arbitrary and intentional misreading of the documents submitted in support of their application." ECF 13 at 13.

The Court agrees with Defendants that, in failing to connect the denial of their I-130 petition to any USCIS policies and procedures Plaintiffs claim are specific to Yemeni petitioners and visa applicants, Plaintiffs lack standing to seek the declaratory judgment claimed in Count Three. Article III standing requires that a plaintiff show (1) an "injury in fact;" (2) that is "fairly traceable to the challenged action of the defendant;" and (3) that is likely to be "redressed" by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). "[N]o federal court has jurisdiction to enter a judgment unless it provides a remedy that can redress the plaintiff's injury." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021). In Count Three, Plaintiffs contend that Defendants' "unreasonable practices and attendant discriminatory procedures violate the INA, APA, and Plaintiffs' constitutional rights." Compl. ¶ 105. But Plaintiffs do not allege facts to show that their purported injury is fairly traceable to the Yemeni-specific policies and procedures alleged in the Complaint.

The gravamen of Plaintiffs' claim that their I-130 petition was wrongfully denied is that Defendants did not properly consider Yemeni divorce law. *See* ECF 13 at 2 (arguing that Plaintiffs have standing to "bring all of their causes of action" because "Defendants arbitrarily and unreasonably misread[] and reject[ed] their legal documents evidencing eligibility for an I-130

14

Petition" and arguing they have "been subjected to the unreasonable application of a policy promulgated to prevent and stymie Yemeni immigration, one by not recognizing Yemen civil documents and two by not recognizing Yemeni divorce law and requirements."). However, as discussed in *supra*, the record demonstrates that the denial of Plaintiffs' I-130 petition was owed to Mohammed's failure to produce satisfactory evidence in response to USCIS's RFE, and Plaintiffs do not allege facts to suggest that any non-Yemeni petitioner or applicant was treated differently than Plaintiffs.

Therefore, Plaintiffs lack Article III standing to pursue the declaratory relief sought in Count Three and fail to state a plausible claim for those relief. *See, e.g.*, Wright & Miller, Fed. Prac. & Proc. § 3531.5 (2023) (no causation or redressability where plaintiff "challenges the denial of a benefit on one ground" but is "ineligible for the benefit on some other ground"). Count Three must be dismissed.[6]

## IV.    CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF 10) is granted, and the Complaint is dismissed without prejudice. A separate Order follows.

  3/30/26
Date

Matthew J. Maddox
United States District Judge

---

[6] Moreover, Plaintiffs appear to concede that the claim for declaratory relief in Count Three is moot. Plaintiffs seek a declaration "finding Defendants' actions in improperly adjudicating the visa petitions under the Yemeni Adjudication procedures and creating a attempt to deny visa petitions, which is discriminatory and contrary to law." *Id.* Compl. ¶ 106. The prayer for relief describes the relief sought as a declaratory judgment that "policies and procedures . . . Defendants continue to apply to Yemeni petitioners are unconstitutional as practiced." *Id.* at 21. But Plaintiffs acknowledge in their opposition that the allegedly discriminatory policies and procedures were rescinded in November 2021. *See* ECF 13 at 6; ECF 14 at 3 n.3.